UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGINA M. HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:24-cv-00971-JAR |
| | ) |
| MHM SUPPORT SERVICES, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion to dismiss filed by Defendant MHM Support Services. ECF No. 26. Plaintiff Regina M. Hill filed a response. ECF No. 29. MHM filed a reply. ECF No. 31. This matter is now fully briefed and ripe for disposition. For the reasons set forth below, MHM's motion will be granted in part and denied in part. The Court will dismiss all of Plaintiff's claims except for her retaliation claim brought under Title VII of the Civil Rights Action of 1964 ("Title VII"). The Court will also direct Plaintiff to file a second amended complaint setting out her allegations in numbered paragraphs and otherwise conforming to the Federal Rules of Civil Procedure and the Court's Local Rules.

### Background

Plaintiff initially filed her pro se Complaint on July 15, 2024. ECF No. 1. Plaintiff's original Complaint raised several claims of employment discrimination against Mercy Hospital. She checked boxes indicating she was bringing claims under Title VII, the Americans with Disabilities Act of 1990 ("ADA"), and for retaliation. Plaintiff also checked boxes indicating that she was discriminated against because of her race, national origin, color, and disability. Plaintiff alleged that she was discriminated against in the terms and conditions of her

employment, retaliated against, subjected to harassment, unlawfully terminated and "called racial slurs, made fun of [on account of her] race . . . and [Mercy Hospital] thought it was funny when [Plaintiff] complained about it, and they made up lies on [her]." ECF No. 1 at 4. The Court interpreted Plaintiff's factual assertions to allege a hostile work environment/harassment claim under Title VII. ECF No. 4 at 3.

On July 18, 2024, and upon the Court's initial review under 28 U.S.C. § 1915(e)(2), the Court found that Plaintiff's original Complaint sufficiently stated a claim under Title VII for retaliatory discharge against Mercy Hospital but failed to state claims under the ADA for disability discrimination or failure to accommodate. The Court also found that Plaintiff failed to properly allege claims under Title VII for race and color discrimination, discrimination in the terms and conditions of her employment, and/or harassment/hostile work environment. *Id.* at 6. Specifically, as to Plaintiff's ADA claims, the Court found that Plaintiff failed to allege facts indicating how her alleged disability—fibromyalgia—substantially impaired a major life activity, how it affected her work, who allegedly knew of her disability, or who at work perceived her as disabled. Similarly, as to her Title VII claims, the Court found that Plaintiff had failed to allege that she was a member of a protected class (she did not allege her race or color), that she was meeting the employer's legitimate expectations, that she suffered an adverse employment action, or that she was treated differently than similarly situated employees who were not members of her protected class. The Court also found that Plaintiff had failed to indicate in her Charge of Discrimination[1] that she was asserting race and color discrimination claims under Title VII, or

---

[1]   Plaintiff alleges in her Charge of Discrimination:

   1.   I was hired by the above-mentioned employer on or about December 28, 2022, as a PCA (Nurse's Assistant), making approximately $15.00 per hour. My employment ended in approximately mid-May 2023.

2

hostile work environment/harassment, or discrimination in the terms and conditions of her employment. For these reasons, the Court dismissed all of Plaintiff's claims against Mercy Hospital except for one claim of retaliatory discharge under Title VII. *Id.* at 11–12; ECF No. 5.

On July 26, 2024, Plaintiff appealed the partial dismissal of her claims. ECF No. 8. On August 14, 2024, the Eighth Circuit dismissed Plaintiff's interlocutory appeal for lack of jurisdiction. ECF No. 12. On September 17, 2024, the mandate issued from the Eighth Circuit, and this Court recovered jurisdiction. ECF No. 16.

On September 24, 2024, Plaintiff filed a motion for leave to amend her complaint. ECF No. 21. On October 28, 2024, the Court granted Plaintiff's motion for leave to amend, and Plaintiff's proposed amended complaint was detached and filed as Plaintiff's Amended Complaint. ECF No. 25.

Plaintiff's Amended Complaint again raises claims under Title VII, the ADA, and for retaliation against Defendant MHM.[2] Plaintiff has checked boxes indicating she was

---

2. During my training period with the employer, the trainer Ashley McCasland only spoke to Caucasians. She gave less training time to the people of other races and colors and didn't train me on some topics at all. When I complained about the discrimination to my Supervisors Tiffany Kunz, Elizabeth Slais, Human Resources, and the Chief Executive Operator's Secretary, I was suspended without pay starting on or about January 27, 2023. The Respondent also failed to reasonably accommodate my disability. I was told by Human Resources that I needed to find a new job within the company by May 15, 2023, or I would be terminated.

3. I believe I was denied a reasonable accommodation for my disability in violation of Title I of the Americans with Disabilities Act of 1994, as amended. I believe I was subject to different terms and conditions of employment than those similarly situated than I, suspended, laid off, denied a reasonable accommodation, and terminated in retaliation for opposing discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended.

ECF No. 1-2.

[2]   As explained in Defendant's answer to Plaintiff's original Complaint, "Mercy Hospital" was not Plaintiff's employer, nor is there a legal entity known as "Mercy Hospital." Plaintiff's

discriminated against on the basis of her race, national origin, color, and disability.  She also states that "they did not like for me to voice my concerns[,] so they made sure I was out the door on purpose [and] told lies to do so."  *Id.* at 4.  In the body of her Amended Complaint, Plaintiff alleges that she was hired after a phone interview with "Lisa" as a patient care assistant ("PCA") working in the women's health department at Mercy Hospital St. Louis.  She states that she informed Lisa that she was disabled and would "need to space out [her] days."  *Id.* at 6.  She then alleges that during her training herself and the other people of color were "not treated the same" as white trainees.  She further alleges that the "safety teacher" was rude to non-white students.

Plaintiff generally alleges that she told "Tiffany" about her experiences at the training session, and then Tiffany "used [her] disability to demote [her] out of the women's health department because [she] spoke up."  *Id.* at 7–8.  Plaintiff alleges that she told Tiffany about having children in college in Puerto Rico and alleges that Tiffany "said oh in Puerto Rico in a condescending way."  *Id.* at 8.  Plaintiff then allegedly told Tiffany that she was hurting but having fun in her work in the women's health department, to which Tiffany responded that she did not want Plaintiff to be in pain and assigned Plaintiff to a desk job and then planned for Plaintiff to interview for a companion position.  Plaintiff alleges that she then asked to instead be assigned to work on the welcome desk at the women's health department, but she was not assigned to that role.  Instead, Plaintiff alleges that she "was forced to sit at home from Jan[uary] of 2023 to Feb[ruary] of 2023 with no work nor any pay."  *Id.* at 14.

Plaintiff then states that unnamed co-workers told her that white people do not have to apply or go to interviews but were instead simply transferred to other departments while non-

---

employer was "MHM Support Services," who is now the sole Defendant in this matter.  ECF No. 17.

4

whites were told to apply for jobs and were set up for failure.  Plaintiff alleges she had an interview scheduled with the neurology department, but in the meantime conducted a phone interview with the oncology department.  During her interview with "Bren" from the oncology department, Plaintiff relates that she told the interviewer that she was disabled and needed to space out her days off and to be off on Fridays to take her mother to doctor's appointments.  According to Plaintiff, Bren said this was all okay.  Plaintiff alleges that HR contacted her a few hours later to tell her that the oncology department wanted to hire her.  Plaintiff says that she accepted the job with the oncology department, and the HR department canceled her interview with the neurology department.

Plaintiff next alleges that she began work for the oncology department in February 2023.  She alleges that co-workers told her she was doing a great job, but then she started receiving harassing emails from Lynn Finer.  Plaintiff alleges that Bren then began scheduling her to work back-to-back days and for shifts on Fridays.  Plaintiff then says that she asked for accommodations for her disability in an attempt to save her job.

She alleges that she was given a phone when she started in the oncology department, but the phone did not work so she had to walk to each nurse to inform them if something was wrong with a patient.  Plaintiff then alleges that an unnamed co-worker told her that she overheard that the department planned to train Plaintiff and then fire her.  Plaintiff then alleges that she "was lied on by the LPN in the oncology department." *Id.* at 24.  As a result, Plaintiff was put on unpaid leave starting on April 1, 2023, until she was officially terminated on May 16, 2023.

Plaintiff alleges she was not given accommodations for her disability but does not specify what accommodations she requested.  Plaintiff also alleges that she asked Defendant's corporate office to take Lynn Finer off of her case because Ms. Finer was "trying to set [her] up to fail and

5

trying to get [her] out of Mercy." *Id.* at 26.  Plaintiff alleges that the corporate office told her that Ms. Finer would no longer be involved with Plaintiff's file, but that never happened.

Plaintiff states that she applied for unemployment on or about April 16, 2023, because she had been unable to find another position with MHM.  Plaintiff then makes several allegations about an April or May 2023 interview with "Renee" in the surgery department, who Plaintiff believes is racist for asking Plaintiff if she was on drugs and for asking Plaintiff why she had been out of work.  Plaintiff alleges that as she was leaving the interview with Renee, that Renee stated "Oh my god those people." *Id.* at 28.

Plaintiff alleges that at some point she shadowed a white woman named Rachel who told Plaintiff that she too had fibromyalgia and that is how she got the job.  Rachel also allegedly told Plaintiff that she did not have to apply for the job.  Plaintiff states that she later called HR to tell them about how she was mistreated by Renee and that Rachel also had fibromyalgia and was white.

Plaintiff states that on May 16, 2023, Lynn Finer sent her an email stating that Plaintiff had been terminated from her employment with MHM.  Plaintiff has attached a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC") (ECF No. 25-1 at 1–2) and thirty (30) pages of emails that she states corroborate her experiences of unsuccessfully trying to find another position at MHM before being terminated.  Plaintiff requests $750,000 in damages and "to make sure this doesn't happen to anyone else." ECF No. 25 at 33.

On November 12, 2024, MHM filed the instant motion to dismiss (ECF No. 26) and memorandum of law in support (ECF No. 27).  MHM argues that the entirety of Plaintiff's Amended Complaint should be dismissed for failure to comply with Federal Rule of Civil Procedure 10(b) because Plaintiff has failed to state her claims in numbered paragraphs or to

6

group her allegations according to the claims that they support.  MHM contends that this failure on Plaintiff's part has made it impossible to respond to Plaintiff's Amended Complaint, and that if Plaintiff's Amended Complaint is not dismissed that Plaintiff be ordered to provide a more definite statement of her claims in numbered paragraphs and grouped according to claims.

MHM further argues that Plaintiff's ADA claims and failure to accommodate claims should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff has failed to allege that she faced adverse employment action because MHM knew of her alleged disability or perceived her as disabled.  Additionally, MHM avers that Plaintiff's Title VII claims for race/color discrimination and hostile work environment/harassment claims must be dismissed for lack of jurisdiction because Plaintiff failed to raise such claims in her Charge of Discrimination.  For this reason, MHM requests that these claims be dismissed for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Rule 12(b)(6).

Notably, MHM has not argued that Plaintiff's claim for retaliatory discharge under Title VII should be dismissed for failure to state a claim.  Instead, MHM argues that Plaintiff's entire Amended Complaint should be dismissed for Plaintiff's failure to set out her allegations in numbered paragraphs grouped according to claims as is required by Rule 10(b).

In her response, Plaintiff states that she does not feel that the case should be dismissed, but she does not cite to any legal authority in support of her position.  Instead, Plaintiff provides notes summarizing some of her attached exhibits.  She then contends that she did raise race, color, and hostile work environment/harassment claims in her original complaint with the EEOC, but she does not point to any evidence in support.  She further states that the "Human Rights Department" and the EEOC "deemed the hospital to have violated [her] civil rights" by giving

7

her the Right to Sue letter.  Plaintiff makes several other statements regarding how her claim was handled by the EEOC and how a previous mediation Plaintiff and MHM was conducted, but these newly raised allegations are not part of her Amended Complaint and therefore the Court cannot consider them in deciding this motion to dismiss.

MHM, in its reply, argues that the case should be dismissed in its entirety for the reasons raised in its motion.  MHM also points out that, in her response, Plaintiff admits to not complying with Federal Rule of Civil Procedure 10(b).  MHM then briefly restates the arguments it raised in its motion.

## Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  A complaint must be dismissed for failure to state a claim when it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Pleadings must include sufficient factual information to provide notice of the grounds on which the claims rest and must "raise a right to relief above the speculative level." *Id.* at 555; *see also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (citation omitted).  When considering a motion to dismiss, the Court accepts as true all factual allegations contained in the complaint and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  *Id.* at 555–56; Fed. R. Civ. P. 8(a)(2).

8

## Discussion

    A.    <u>ADA Claims</u>

"The ADA bars private employers from discriminating against a qualified individual on the basis of disability." *Faidley v. UPS, Inc.*, 889 F.3d 933, 940 (8th Cir. 2018) (internal quotation marks omitted). To establish a prima facie case of discrimination under the ADA, "an employee must show that she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) has suffered an adverse employment action because of her disability." *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). To establish a disability, the plaintiff must show a physical or mental impairment substantially limiting a major life activity, a record of such impairment, or that the claimant is regarded as having such impairment. 42 U.S.C. § 12102(1); *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490–91 (8th Cir. 2002). Under the ADA, prohibited discrimination includes intentional discrimination against a qualified individual because of her disability, which can be shown by evidence of disparate treatment or other proof based on the specific facts of the case. *See* 42 U.S.C. § 12112(a)–(b)(1); *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998).

Plaintiff's Amended Complaint has failed to rectify the issues the Court previously noted as the reasons it dismissed her ADA claim as raised in the original Complaint. Plaintiff's Amended Complaint mentions a specific alleged disability, fibromyalgia, only twice: once in the context of Plaintiff's discussion with a co-worker who Plaintiff claims also had fibromyalgia and once in a discussion with Renee who was allegedly a manager of the surgery department for MHM. Plaintiff again fails to raise any allegations that she faced an adverse employment action because Defendant knew of her disability or because she was perceived as disabled. To the contrary, Plaintiff only alleges that she faced any adverse employment action because she spoke

9

up about allegedly race-based discrimination against other trainees during her employment training.  Plaintiff does not allege that her fibromyalgia impairs a major life activity or how it allegedly affected her work besides general statements that she needed to have her workdays "spaced out."  Taking Plaintiff's allegations as true, as the Court must do when deciding a motion to dismiss, Plaintiff's claims fail to allege facts sufficient to support a claim for discrimination under the ADA.  The Court will therefore dismiss Plaintiff's ADA claim.

      B.     <u>Title VII Claims of Discrimination on the Basis of Race, Color, and National Origin</u>

Title VII makes it unlawful for an employee to discriminate against an individual because of her race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  To state a claim under Title VII, a plaintiff must show either direct evidence of discrimination or evidence that is sufficient to create an inference of discrimination under the *McDonnell Douglas* burden shifting framework.  *Onyiah v. St. Cloud State Univ.*, 684 F.3d 711, 716 (8th Cir. 2012) (citation omitted). To properly support a racial discrimination claim under Title VII, plaintiff must allege that she is a member of a protected class, she was meeting the employer's legitimate job expectations, she suffered an adverse employment action, and was treated differently than similarly situated employees who were not members of her protected class.  *Jackman v. Fifth Jud. Dist. Dep't. of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013).  Thus, not only must the plaintiff articulate in her complaint what her race and color is, how she was racially discriminated against, and how she believes she was meeting the employer's legitimate job expectations, but she must also articulate how she believes she was treated differently from those who were not of her same race (or color) but were not terminated or disciplined for acting similarly.  *Id.*

Plaintiff has again failed to articulate her race or color.  She does not allege that she suffered discrimination based on the color of her skin or because of her race.  While she alleged

10

that people of color were treated differently compared to white trainees during her training with MHM, she does not allege that she was personally treated differently because of her race or color. She states a few times in her Amended Complaint that white employees of MHM were not required to apply for their jobs or to be interviewed for their positions. But these allegations alone cannot support a claim under Title VII because Plaintiff has not alleged that she was discriminated against on the basis of her race or color, nor has she alleged that she was meeting her employer's legitimate job expectations.

Arguably, she has asserted that she is Puerto Rican and thus is a member of a protected class based on her national original. She alleges through conclusory allegations that she was treated differently because she was Puerto Rican. But again, Plaintiff has not alleged that she was meeting her employer's legitimate job expectations, which means that she cannot maintain a Title VII claim for alleged discrimination on the basis of her national origin.

More problematic however is that Plaintiff's Charge of Discrimination does not state that she is raising a race, color, or national origin discrimination claim under Title VII. As the Court has already discussed regarding her original Complaint, Plaintiff's Charge of Discrimination couches her claims related to Title VII as a consequence of her opposition to alleged racial discrimination she observed during her training. ECF No. 1-2 ("I believe I was subject to different terms and conditions of employment than those similarly situated than I, suspended, laid off, denied a reasonable accommodation, and terminated in retaliation *for opposing discrimination*, in violation of Title VII . . . .") (emphasis added). As the Court previously stated, Plaintiff cannot pursue Title VII claims in federal court until she has raised such claims as part of

her Charge of Discrimination.³ *See Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1025 (8th Cir. 2004) (a plaintiff may only pursue claims in her complaint that are "like or reasonably related to" claims in the Charge of Discrimination). Similarly, Plaintiff's claims based on a theory of hostile work environment/harassment or discrimination in the terms or conditions of her employment are not appropriately raised before the Court as they too were not raised in Plaintiff's Charge of Discrimination. Therefore, these claims will be dismissed for lack of jurisdiction because Plaintiff has failed to exhaust her administrative remedies.

### C. Title VII Retaliation Claim

To establish a prima facie case of retaliation under Title VII, a plaintiff must establish that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Thomas v. Corwin*, 483 F.3d 516, 530 (8th Cir. 2007). Plaintiff has alleged that she complained that a trainer acted in a racially discriminatory manner during her training course. Plaintiff further alleges that, as a result of complaining about the discriminatory behavior, she was demoted and placed on unpaid leave. Taken as true, these allegations are sufficient for Plaintiff to continue to pursue her retaliation claim under Title VII.

### D. Plaintiff's Failure to Follow Federal Rule of Civil Procedure 10

---

³ The court also notes that the Right to Sue Letter Plaintiff received from the EEOC is not an endorsement of Plaintiff's claims as she argues in her response. *See* ECF No. 29 at 10 ("I feel if it was good enough for the Human Rights Department and EEOC to take the case and investigate it in which they deemed the hospital to have violated my civil rights and gave me my right to sue letter . . . then I should have a fair right to have my voice heard in court.") As the Supreme Court has stated, "when the EEOC receives a charge, in contrast to agencies like the National Labor Relations Board and the Merit Systems Protection Board, it does not adjudicate the claim." *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 544 (2019) (cleaned up). Plaintiff is incorrect to state that the EEOC deemed MHM to have violated her civil rights. Whether MHM violated Plaintiff's civil rights is still in issue and is to be decided by this Court in this case.

12

Under Federal Rule of Civil Procedure 10(b): "A party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." Therefore, Plaintiff is required to have set forth her claims by numbered paragraphs but has failed to do so. *Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856 (8th Cir. 1996) ("In general, *pro se* representation does not excuse a party from complying with a court's orders and with the Federal Rules of Civil Procedure.") (citations omitted). Plaintiff admits to not setting out her allegations in numbered paragraphs. Plaintiff has also failed to state her separate claims in separate counts. Because of this, Plaintiff's claims are difficult to discern, and MHM claims that it is unable to meaningfully respond to the Amended Complaint.

The Court agrees that Plaintiff's Amended Complaint as currently pleaded is hard to follow and does not clearly distinguish which allegations relate to which of her claims, making it difficult or impossible for MHM to meaningfully respond. Even so, Plaintiff appears to have alleged sufficient facts supporting a claim for retaliation under Title VII, as discussed above. The Court will therefore deny MHM's motion to dismiss Plaintiff's retaliation count based on her failure to follow Federal Rule of Civil Procedure 10(b). But the Court will grant MHM's request in the alternative and will direct Plaintiff to refile her complaint, setting out each allegation in a numbered paragraph and clarifying which allegations support which of her claims.

Plaintiff will be given thirty (30) days from the date of this order to file a Second Amended Complaint. Plaintiff can again use the Court's Employment Discrimination Complaint form. In the section that asks for Plaintiff to state the essential facts of her claim, Plaintiff shall

13

briefly and clearly set out her allegations in numbered paragraphs. Each numbered paragraph should be limited as far as practicable to a single set of circumstances.

## Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant MHM Support Service's motion to dismiss is **GRANTED in part** and **DENIED in part**. ECF No. 26.

**IT IS FURTHER ORDERED** that Plaintiff's claims for race and color discrimination, discrimination in terms and conditions of her employment, and harassment/hostile work environment brought under Title VII are **DISMISSED without prejudice** for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

**IT IS FURTHER ORDERED** that Plaintiff's disability discrimination and failure to accommodate claims brought under the ADA are **DISMISSED without prejudice** for failure to state a claim upon which relief can be granted per Federal Rule of Civil Procedure 12(b)(6).

**IT IS FURTHER ORDERED** that Defendant's alternative request for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) is **GRANTED**. Plaintiff is directed to file within **thirty (30) days** from the date of this order a second amended complaint that sets out her claims in numbered paragraphs and otherwise conforms to the Federal Rules of Civil Procedure and this Court's Local Rules.

Failure to timely comply with this Order may result in dismissal of this action without further notice.

A separate Order of Dismissal shall accompany this Order.

Dated this 21st day of January, 2025.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE